FILED

2017 Mar-21  AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| VICKI OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:15-cv-01556-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Vicki Owens ("Owens") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Owens timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Owens filed her application for DIB on July 23, 2012, which the Agency initially denied. (Tr. 40-46, 389-97). Owens alleges she is disabled due to diabetes (feet swelling), high blood pressure, leg pain, thyroid disease, degenerative disc disease (back pain), numbness in her left leg, and anemia. (Tr. 130). Owens requested a hearing, and the Administrative Law Judge ("ALJ")

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 19).

held a hearing on December 12, 2013, issuing an unfavorable decision on February 28, 2014.  (Tr.

6-20, 24-39).   Owens was fifty-eight years old when the ALJ rendered his decision.  (Tr. 20, 28-

29, 86, 131).   Owens has a twelfth grade education, and past work history as a sewing machine

operator, receptionist, packer, cashier, assembler of motor vehicle parts, and file clerk.   (Tr. 20,

28-29, 37, 86, 118, 131-32, 155-62).

Owens sought review by the Appeals Council, but it declined her request on July 24, 2015.

(Tr. 1-3).  On that date, the ALJ's decision became the final decision of the Commissioner.  On

September 9, 2015, Owens initiated this action.  (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The

function of this Court is to determine whether the decision of the Commissioner is supported by

substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402

U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must

"scrutinize the record as a whole to determine if the decision reached is reasonable and supported

by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it

reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Social Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Owens had not engaged in substantial gainful activity during the period from her alleged onset date of March 24, 2011 through June 30, 2012, her date of last insured. (Tr. 11). At Step Two, the ALJ found Owens had the following severe impairments: diabetes, hypertension, hypothyroidism, coronary artery disease, myofascial pain, history of anemia, and obesity. (Tr. 11-15). At Step Three, the ALJ found Owens did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to Step Four, the ALJ determined Owens' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Owens has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing of ropes, ladders, or scaffolds, and no concentrated exposure to extreme heat or cold. (Tr. 16-19).

At Step Four, the ALJ determined, through the date of last insured, Owens was capable of

performing her past relevant work as a receptionist, as it did not require the performance of any work-related activities precluded in the RFC. (Tr. 19). Therefore, the ALJ determined Owens was not under a disability and denied Owen's claim. (Tr. 20).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Owens failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

### A. ALJ's Finding That Owens Could Perform Her Past Relevant Work

Owens first challenges the ALJ's determination at Step 4 that she could perform her past relevant work as a receptionist. At Step 4 of the sequential evaluation process, an ALJ determines if the claimant can perform her past relevant work given her RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). A claimant will be found not disabled if she retains the RFC to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands or job duties of the occupation as generally required by employees throughout the national economy. *See* Social Security Ruling 82-61 (1982), 1982 WL 31387.

Owens argues the ALJ's Step 4 finding is not supported by substantial evidence because he did not develop the specific requirements of Owen's previous receptionist job. (Doc. 11 at 10).

Here, the ALJ explained:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed.

(Tr. 19).  The ALJ's finding is based on the Vocational Expert's ("VE") testimony that Owens could perform her past relevant work as a receptionist given her RFC and given that it is a position consistent with the *Dictionary of Occupational Titles* No. 237.367-038, which classifies the position as sedentary and semi-skilled.  (Tr. 19, 38).  Before the hearing, the VE reviewed Owens' records, which contain her Work History Report describing the functional demands and duties of her receptionist job.  (Tr. 37-38, 161).  Despite bearing the burden of proving she cannot perform her past relevant work, *Barnes v.* Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991), Owens fails to identify how any further development of the requirements of her specific receptionist job would change the ALJ's finding.  Furthermore, Owens does not show why she could not perform the job of a receptionist as it is generally performed in the economy.

Because the ALJ found Owens could perform her past relevant work as a receptionist, he did not need to proceed to Step 5 of the sequential evaluation process or make a determination based on the GRIDs.  20 C.F.R. § 404/1520(a)(4), (g) (explaining that an ALJ will only consider whether a claimant can make an adjustment to other work if she cannot do her past relevant work).

## B. The ALJ's Credibility Finding

Owens next argues the ALJ's credibility finding is not supported by substantial evidence. The ALJ, however, provided a detailed explanation of his credibility assessment, and substantial evidence supports his finding.[4]

---

[4] Owens has moved to remand this action pursuant to Social Security Ruling 16-3p, arguing the action must be remanded so the ALJ can reevaluate the intensity and persistence of Owens' symptoms.  (Doc. 13).  SSR 16-3p, effective March 28, 2016, superseded SSR 96-7p,

The Eleventh Circuit applies a three-part pain standard when a claimant takes the position that she is disabled based on testimony of pain or other disabling symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The standard requires: (1) evidence of an underlying medical condition; and (2) either objective medical evidence confirming the severity of the alleged pain; or (3) that the objectively determined medical condition can be reasonably expected to give rise to the claimed pain. *Wilson* 284 F.3d at 1225. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. 20 C.F.R. §404.1529(c)(d); SSR 96-7p (1996), 1996 WL 374186.

The ALJ addressed Owen's statements regarding each of her impairments. (Tr. 17-19). First, the ALJ addressed Owens' complaints of myofascial pain (Tr. 17). The ALJ noted Owens' alleged pain in her legs and back, allegations she had to lie down or stretch out one to two hours a day, and allegations she could only stand for fifteen to twenty minutes at a time. (Tr. 17, 31, 34-36). The ALJ then explained that the objective medical evidence did not support the alleged level of limitation. (Tr. 17). *See* 20 C.F.R. § 404.1529(c)(2). The ALJ pointed to the bone density test showing Owens to have normal bone density for her age and normal bone density in her lumbar

---

which was in effect when the ALJ issued his decision. SSR 16-3p eliminates the use of the term "credibility" and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016). However, Owens has pointed to no authority that indicates this clarification requires remand. Because the effective date of SSR 16-3p came *after* the ALJ's decision, the court reviews the case under SSR 96-7p. However, an evaluation of the ALJ's decision with the clarification in mind does not require remand. The ALJ did not make any statements to indicate he assessed the credibility of plaintiff's character, but rather assessed the statements she made in light of the objective medical evidence. As such, the motion, (doc. 13), is **DENIED**.

spine.  (Tr. 17, 237).  Despite alleged pain in her legs, ankles, and back, Owens had no complaints of pain or musculoskeletal symptoms at multiple visits to Etowah County Free Health Clinic.  (Tr. 17, 400, 423-25).  In March 2012, Owens indicated the medication she was given helped with the pain in her legs.  (Tr. 17, 406).  As the ALJ also noted, Owens' reported activities of daily living did not support the level of limitation she alleged.  (Tr. 17).  Also, a Third Party Function report noted Owens had problems with concentration; however, Owens reported she could pay bills, count change, and maintain a checkbook.  (Tr. 17, 150, 168).  Owens testified she and her husband, who is in poor health, are able to complete household chores.  (Tr. 17, 32-33).  Owens reported that, along with her husband, she cooks breakfast and does dishes.  (Tr. 17, 147).  Owens reported she washes clothes, waters flowers, and does laundry. (Tr. 17, 147).  Owens also reported she goes to the grocery store and has no problem with personal care.  (Tr. 17, 148, 150).  Owens further reported she was able to lift ten pounds.  (Tr. 17, 152).

The ALJ also addressed Owens' statements regarding her coronary artery disease.  (Tr. 18).  The ALJ noted Owens alleged she had chest pain and shortness of breath.  (Tr. 17, 112-13).  But, as the ALJ explained, the objective medical evidence did not support the level of limitation Owens alleged.  (Tr. 17-18).  Despite Owens' alleged limitations and alleged pain, she testified she does not take anything specific for her heart condition.  (Tr. 18, 32).  Owens alleged she experiences shortness of breath, but in May 2012, her oxygen level was 99%.  (Tr. 18, 405).  Owens' lungs were clear to auscultation during examinations in May 2013, December 2013, and February 2014.  (Tr. 18, 429, 436, 438).  Additionally, in January 2013, Owens stated she had chest pain but that it was relieved by Aspirin.  (Tr. 18, 424).  The ALJ explained Owens' activities of daily living did not support the level of limitation she alleged (Tr. 17).

With respect to her hypertension, Owens had been treated for hypertension, but it was controlled with medication.  (Tr. 18, 432-33, 436, 439).  In August 2013, medical records describe Owens' hypertension as doing well, and she had a blood pressure reading of 132/69.  (Tr. 18, 433). In October 2013, medical records describe Owens' hypertension as controlled.  (Tr. 18, 432).  In November 2013 and February 2014, medical records describe Owens' hypertension as being at goal.  (Tr. 18, 436, 439).

With respect to her hypothyroidism, the ALJ noted there was no indication Owens complained of any symptoms resulting from hypothyroidism so severe as to be disabling.  (Tr. 18). The ALJ also addressed the credibility of Owens' subjective complaints regarding her anemia. (Tr. 19).  As the ALJ noted, Owens reported in her initial contact form that her anemia does not keep her from working.  (Tr. 19, 115). With respect to her obesity, the ALJ noted, no physician stated Owens' obesity was disabling, and Owens' obesity was not so severe as to prevent all ambulation, reaching, and orthopedic and postural maneuvers.  (Tr. 19).  Thus, substantial evidence supports the ALJ's finding that Owens' statements regarding the intensity, persistence, and limiting effects of Owens' symptoms were not entirely credibility.  (Tr. 17-19).  The record shows the ALJ clearly evaluated the credibility of Owens' statements against the objective medical evidence in the record and did not make any determination regarding personal credibility.  *See supra* note 4.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and the parties' submissions, the decision of the Commissioner of Social Security denying Diesing's claim for SSI is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

A separate order will be entered.

DONE this 21st day of March, 2017.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE